**Chrysanthe SANNERUD, Appellant (Defendant),**

v.

**Paul M. BRANTZ and Betty Jean Brantz, Appellees (Plaintiffs).**

**Paul M. BRANTZ and Betty Jean Brantz, Appellants (Plaintiffs),**

v.

**Chrysanthe SANNERUD and The Sannerud Family Trust, Appellees (Defendants).**

Nos. 96–54, 96–55.

Supreme Court of Wyoming.

Dec. 10, 1996.

---

Mary Ann Budenski, Casper, for Chrysanthe Sannerud.

Sharon L. Kinnison, Holstedt & Kinnison Law Offices, P.C., Sheridan, for Paul M. Brantz and Betty Jean Brantz.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

In *Sannerud v. Brantz*, No. 96–54, Chrysanthe Sannerud (Sannerud) appeals from the summary judgment order which held that the real estate transaction between Sannerud and Paul and Betty Brantz (Brantz) constituted a mortgage and not a real estate sale. She also appeals the district court's failure to address her laches and estoppel arguments in its order. In *Brantz v. Sannerud*, No. 96–55, Brantz appeals from the district court's order which found that Sannerud did not breach her fiduciary duty as a realtor. We affirm the district court in both cases.

## ISSUES

In her appellant's brief, *Sannerud v. Brantz*, No. 96–54, Sannerud presents the issues as:

I. Did the district court err in ruling that the contractual agreement entered into between the parties was a mortgage?

II. Did the district court err in failing to consider defendant's [Sannerud's] arguments in equity including laches [and] equitable estoppel[?]

Brantz presents the following issues in the brief of appellee, *Sannerud v. Brantz*, No. 96–54:

1. When borrowers deeded their property to the lender and the parties contemporaneously entered into an installment contract for the reconveyance of the property back to the borrowers upon payment of the amount borrowed, did the deed and contract constitute a mortgage?

2. Should the borrowers have been barred from relief on account of the equitable defenses of laches and equitable estoppel?

In the appellants' brief, *Brantz v. Sannerud*, No. 96–55, Brantz states a single issue:

Whether a real estate broker's principals should have a remedy for the broker's breach of fiduciary duty, when the broker obtained ostensible title to the principals' property in such a way that sale of the property pursuant to the listing agreement was not in the broker's interest.

In *Brantz v. Sannerud*, No. 96–55, Sannerud's appellee brief presents the following statement of the issue:

Whether the evidence supports that:

1. Sannerud had a fiduciary duty to Brantz and, if so, did that duty extend to the contractual agreement for sale and repurchase of the Virginian Motel?

2. Did Sannerud breach the duty?

3. If there was a breach of duty, what damage did Brantz suffer and what remedy is appropriate[?]

## FACTS

In 1973, Brantz entered into a real estate sales contract for the purchase of real property, the Virginian Motel in Casper, Wyoming. The purchase price was $160,000. In 1986, Brantz was in default on his installment payments and still owed $22,000 of the original $160,000 on the property. Brantz needed $22,000 to pay off the contract for deed and avoid repossession by the owner. Brantz

hired Sannerud, a licensed real estate broker in Wyoming, to market the property. Sannerud was to receive a ten percent commission plus fifty percent of the price over $100,000. The listing price was $150,000. Once they had a marketing agreement, Sannerud loaned Brantz $22,000 to pay off the balance of the contract for deed, thereby avoiding repossession. In return for the loan, she required a deed from Brantz with a buy-back agreement wherein Brantz would purchase the property back for $22,000 plus interest. The buy-back agreement was in the form of a Real Estate Sales Contract. The contract included execution of mutual deeds, execution of the contract and deposit of the documents with an escrow agent.

Shortly thereafter, Brantz decided Sannerud was not marketing the property properly and stopped making payments. On October 24, 1986, Sannerud sent a letter to the escrow agent stating no payment had been made on the contract since August 12, 1986. She then notified Brantz that she had withdrawn the escrow papers from the bank and repossessed the property. Brantz's attorney wrote a letter to Sannerud, objecting to the repossession, claiming right to possession and asserting Sannerud's actions breached her fiduciary duty to Brantz.

Sannerud remained in possession of the property until Brantz filed this action on August 27, 1993. Brantz asked the trial court to quiet the title to the property in his name and to cancel the deeds which he claimed were intended to be a mortgage. In causes of action entitled Slander of Title, Reformation of Deeds, Cancellation of Deeds, and Undue Influence Pursuant to Fraudulent Scheme, Brantz also claimed that Sannerud breached her fiduciary duty as a real estate broker by failing to sell, and then maliciously and fraudulently taking, his property.

Both parties moved for summary judgment. The district court granted partial summary judgment in favor of Brantz, finding that, as a matter of law, the transaction between Sannerud and Brantz constituted a mortgage and Brantz was entitled to the protection provided by the foreclosure statutes. The district court then held a bench trial and determined Sannerud did not breach her fiduciary duty and was not acting as a real estate agent when she recorded the deed to the property in her name.

In her proposed findings of fact and conclusions of law, presented to the district court after the August 3, 1995, bench trial, Sannerud asserted the doctrine of laches as a defense. The district court did not address this argument in its decision letter or order. Sannerud appeals the court's determination that the transaction constituted a mortgage and argues laches and equitable estoppel bar Brantz from this action. Brantz appeals the court's findings that Sannerud did not breach her fiduciary duty and that Sannerud was not acting as his real estate agent when she recorded the deed to his property.

## DISCUSSION

When a question concerning the nature of a real estate transaction arises, in order for the court to find a mortgage, there must have been an intent to create a security, as construed from the written agreement and the surrounding circumstances. *Cliff & Co. Ltd. v. Anderson,* 777 P.2d 595, 601 (Wyo.1989). "[A] security interest arrangement, in case of doubt, should be defined as a mortgage in order to protect all parties by denial of forfeiture and affording statutory rights of redemption." *Marple v. Wyoming Production Credit Ass'n,* 750 P.2d 1315, 1318 (Wyo.1988).

If the transaction is merely a conveyance with a mortgage back, mortgage law prohibits contemporaneous release or waiver of the equity of redemption. *Cliff & Co. Ltd.,* 777 P.2d at 601, citing E. GEORGE RUDOLPH, THE WYOMING LAW OF REAL MORTGAGES 147 (1969). This rule operates to nullify any agreement made at the time of the mortgage providing for forfeiture upon default. *Id.* "A mortgagee's only remedy upon mortgage default is foreclosure and public sale, either by power of sale pursuant to Wyo.Stat. §§ 34–4–101 to –113 (1977) or by judicial sale in accordance with Wyo.Stat. §§ 1–18–101 to –112 (1977)." *Cliff & Co. Ltd.,* 777 P.2d at 601. "Additionally, in contrast to the finality and harshness of a forfeiture, in a mortgage transaction the mortgagor has a statutory

right of redemption pursuant to § 1–18–103(a), which applies to foreclosure sales pursuant to judicial decree, execution, or power of sale." *Id.*

Any agreement, made contemporaneously with the execution of the mortgage, by which the mortgagor attempts to waive or release his right of redemption, is considered to be contrary to public policy and void. *Gould v. McKillip,* 55 Wyo. 251, 99 P.2d 67 (19[40]). This apparently resulted from the concern of the early courts that necessitous mortgagors would be pressed into agreeing to harsh and unconscionable future forfeitures. To this extent the law of mortgages is based upon a denial of freedom of contract.

E. GEORGE RUDOLPH, THE WYOMING LAW OF MORTGAGES 4 (1993).

 Courts have established factors to determine whether a transaction is a mortgage, intended as security, or a conditional sale. 59 C.J.S. *Mortgages* § 10(b)(1) (1949). Those factors include change of possession; great disparity between the value of the property and the price; whether the sale is accompanied by a defeasance, a provision for redemption or an agreement for a reconveyance; and whether a borrowing or lending accompanies the execution of the instrument or is contemplated at the time. *Id.* "If any one of these facts is found to exist, in a doubtful case it will go far to show that a mortgage was intended." *Id.* That the grantor continues in the possession and enjoyment of the premises may also indicate the conveyance was intended as a mortgage. *Id.* at § 10(b)(5).

██ In this case, the transaction included a great disparity between the value of the property and the sale price (a listing price of $150,000 and a sale price of $22,000); the sale was accompanied by an agreement for reconveyance, a borrowing and a lending accompanied the execution of the deed, and Brantz, the grantor, continued in possession and enjoyment of the property after the transaction. Clearly, the parties intended the transaction to create security for the $22,000 loan from Sannerud to Brantz. Although the parties agreed to forfeiture upon default, mortgage law does not countenance such an agreement when the transaction is intended as security.

In the *Carpenter* case, Justice Blume quoted Pomeroy to the effect that ". . . the question finally turns, in all cases, upon the real intention of the parties. . . ." But if this were so, there could rarely be a finding of a mortgage because in the usual case the intention of the parties is entirely clear. The lender insists upon a deed rather than a mortgage in order to avoid the expense and delay of foreclosure. The borrower accedes because he needs the money and cannot obtain it on more favorable terms. Justice Blume, in the *Carpenter* case, very narrowly avoided following this line of thought to its logical conclusion, that, since the lender refused to take a mortgage, the transaction cannot be construed as a mortgage. But such conclusion would seem to conflict with the basic rule prohibiting a mortgagor from waiving his equity of redemption when the mortgage is executed.

RUDOLPH, THE WYOMING LAW OF MORTGAGES 171 (1993).

Professor Rudolph's analysis of *Carpenter & Carpenter v. Kingham,* 56 Wyo. 314, 109 P.2d 463 (1941), is particularly applicable to this case. The factual scenario is remarkably similar. Brantz sold the property to Sannerud for much less than its value, Sannerud argues that Brantz was desperate for money, that she refused to take a mortgage and, therefore, she should not be held to have entered into a mortgage.

██ Sannerud argues that since she did not intend to take a mortgage, but only to create security for her loan, the transaction is not a mortgage. As Professor Rudolph notes, there is a difference between intending to take a mortgage and intending a transaction to create security. Therefore, although the parties agreed that default would result in forfeiture and the transaction was not a mortgage, the transaction was clearly intended to create security for a loan. In fact, Sannerud admits the transaction secured her loan. The rule which prohibits a mortgagor from waiving his equity of redemption when the mortgage is executed requires us to find

a mortgage when a transaction, like the one involved here, is intended to secure a debt, even if the parties expressly provide for forfeiture with no right of redemption.

■ The district court found that Brantz understood the nature of the transaction and Sannerud disclosed what she knew or understood about the transaction when it determined Sannerud did not breach her fiduciary duty as a realtor. "We will not interfere with the decision of the district court and accord its factual determinations great deference unless there is a procedural error or a clear abuse of discretion." *Roberts v. Vilos*, 776 P.2d 216, 217 (Wyo.1989). The judgment must be sustained unless clearly erroneous, manifestly wrong, or totally against the evidence. *Id.* The court's determination that Brantz was fully informed and understood the nature of the transaction is not clearly erroneous or contrary to the evidence. Therefore, we affirm that decision.

■ Finally, Sannerud complains the district court did not address her laches and estoppel arguments. Sannerud argues that laches or equitable estoppel apply to this case because Brantz did not file this action until 1993 and she took possession of the property in 1986. However, Sannerud did not mention these defenses until after the bench trial in her proposed findings of fact and conclusions of law. Laches and estoppel are affirmative defenses which must be pleaded. *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292, 1297 (Wyo.1991); Wyo.R.Civ.P. 8(c). Sannerud's failure to timely plead these defenses explains the district court's failure to consider them. The decision of the district court is affirmed in all respects.

## CONCLUSION

Transfer of a deed intended as security for a loan constitutes a mortgage, subject to rights provided by statute. Sannerud fully informed Brantz about the details of the transaction; therefore, she did not breach her fiduciary duty to him. Sannerud's fail-ure to affirmatively plead laches and estoppel waived those defenses. We affirm.